UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
MICHAEL GLOVER,                                                         :
                                                                        :     11 Civ. 9122 (PAE)
                                        Plaintiff,                      :
                                                                        :     OPINION & ORDER
                -v-                                                     :
                                                                        :
DAVID GREENMAN et al.,                                                  :
                                                                        :
                                        Defendants.                     :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Plaintiff Michael Glover, proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against defendants David Greenman and Dr. Satter,[1] alleging violations of the Eighth Amendment. Defendants move to dismiss the complaint for failure to state a claim, or, alternatively, for summary judgment. For the reasons stated, the Court grants summary judgment in defendants' favor on Glover's Eighth Amendment claim and dismisses what the Court construes to be Glover's state law claims without prejudice.

---

[1] Defendants identify themselves as David Greenman, D.M.D., and Quazi Satter, D.D.S. *See* Def. Br. 1. Dr. Greenman is an oral surgeon, and Dr. Satter a general dentist, at the George R. Vierno Center ("G.R.V.C.") dental clinic on Rikers Island.

**I.     Background**

    **A.     Factual Background**[2]

On September 28, 2010, Glover, at the time incarcerated at the G.R.V.C. on Rikers Island, saw Dr. Greenman, who performed a tooth extraction for Glover. Am. Compl. 2. Glover alleges that Dr. Greenman "became upset while trying to extract [the] tooth and started performing incompet[e]nt[ly] and making inadequate decision[s]." *Id.* at 10. According to Glover, Dr. Greenman "started digging under the side of plaintiff['s] jaw where defendant cut a chunk of plaintiff['s] gum causing plaintiff to jump in dental chair because of feeling pain." *Id.* Glover also states that, while Dr. Greenman was extracting his tooth, it broke, and Dr. Greenman "became angry." Pl. Br. 3.

According to Glover, the "incompetent" extraction led to severe pain, for which he visited the medical facility on repeated occasions and received pain medication. *See* Am. Compl. 10–13; Pl. Br. 3–4, 7; Glover Decl. *passim*. On October 26, 2010, after having requested a second opinion, Glover received an appointment with Dr. Satter. He alleges that Dr. Satter's follow-up treatment was inadequate, because Dr. Satter "disregard[ed] the consultation report and [Glover's] problem," Glover Decl. 3, and stated in a report "that the extraction was [] good and healing well," Am. Compl. 12.

Glover alleges that, as a result of these events, he suffered extreme pain, swelling, and infection in his gum, and had "to endure extreme pain daily," Am. Compl. 3, until he was later

---

[2] The Court's account of the facts is drawn from Glover's Amended Complaint ("Am. Compl."), Dkt. 19; Defendants' memorandum of law in support of their motion to dismiss or motion for summary judgment ("Def. Br."), Dkt. 54, 56; Glover's affirmation in opposition to that motion, Dkt. 81 & 82 ("Pl. Br."), and accompanying declaration ("Glover Decl."), Dkt. 83; Defendants' reply affirmation in further support of their motion ("Def. Reply Br."), Dkt. 87; and from Glover's medical records, which were supplied in part by him, *see* Glover Exhibits, Dkt. 61, and in part by Defendants in support of their motion for summary judgment, *see* Def. Br. and attached exhibits (complete certified correctional health services records), Dkt. 59, 60.

transferred to a different facility, where he eventually received oral surgery for a retained root. *See id.* at 13; Glover Decl. 3.

Glover's medical records, some of which he appended to his Amended Complaint and some of which Defendants submitted along with their motion to dismiss and/or motion for summary judgment, help reconstruct the relevant events. The records show that, pursuant to a reference made on September 20, 2010 by a Dr. Mirabile, on September 28, 2010, Dr. Greenman extracted Glover's tooth #15. Glover Ex. A, at 5; Def. Br. Ex. B, at 441. Defendants have submitted a record of a pharmacy order that Dr. Greenman placed that day for Glover for Naprosyn (pain medication). *Id.* at 449.

The next day, Glover visited the medical clinic for a "Chronic Care Follow Up Visit" for his asthma. Glover Ex. A, at 7. The doctor's notes indicate that Glover was "[n]ot in acute distress" and that he received Motrin and Amoxicillin. *Id.* On October 5, 2010, Glover saw Dr. Adriana Vives for gingival pain. Dr. Vives's notes state that Glover was experiencing "some discomfort on chewing and eating solid food" and that "[M]otrin is not helping." *Id.* at 8. She noted that there was "moderate gingival erythema" (redness) and "swelling" at the site of the extraction but "no facial swelling or asymmetry." *Id.* She prescribed Tylenol #3, discontinued the Motrin, and continued the Amoxicillin and Peridex (mouthwash). *Id.* On October 12, 2010, Glover again saw Dr. Vives, complaining that a "remnant of a tooth . . . was not extracted when he had dental extraction." Dr. Vives's records state: "tooth remnant noted," *id.* at 9, but also state elsewhere that the patient was "claiming . . . that there seems to be a remnant of the tooth," *id.* at 12. Her notes also indicate that there was "no gingival infection." Dr. Vives renewed Glover's prescription for Tylenol #3 and requested an oral surgery consultation. *Id.* at 9.

On October 14, 2010, Glover appears to have again visited the medical clinic, complaining of a toothache. The doctor's notes from that visit state that Glover "has not picked up" the prescription for Tylenol #3, and that he was advised to do so. *Id.* at 10. The notes otherwise state that his mouth was "unremarkable" except for cavities and that the oral surgery request was "pending." *Id.* Upon another visit, on October 19, 2010, Glover stated that he felt that "a part of [his] tooth was left behind," leading to "pain at the site of [the] tooth extraction." *Id.* The notes from that visit state that the molar extraction site was healing and that no swelling or erythema was visible. *Id.* They also state that an oral surgery consult request had been submitted, and refer to a "current order for tramadol" (pain medication). *Id.* at 11.

On October 21, 2010, and again the following day, Glover again visited the medical clinic complaining of tooth pain and that "there seems to be a remnant of the tooth that needs to be extracted." The notes from the October 21 visit state that an X-ray was taken and that the "#15 extraction site [is] healing normally." *Id.* at 12.

On October 26, 2010, Dr. Satter examined Glover for a second opinion. Dr. Satter noted that, according to the X-ray, tooth #15 had been extracted completely. *Id.* at 20. Dr. Satter explained to Glover that a sliver of bone fragment on the socket remained, but told Glover that it would heal on its own. *Id.* Dr. Satter's note states that Glover understood that explanation. *Id.*

After his appointment with Dr. Satter, Glover visited the medical clinic at G.R.V.C. on at least five different occasions, during only two of which he complained of tooth pain: (1) on October 28, 2010, during another chronic care follow up visit, he complained of "pain at the site of [the] tooth extraction," Glover Ex. A, at 14; (2) on November 11, 2010, he complained of chronic knee and back pain, but did not mention tooth pain, Def. Br. Ex. B, at 486; (3) on November 17, 2010, he sought a reference to an optometrist for a replacement pair of glasses,

4

but did not evidently complain of tooth pain, *id.* at 496; Glover Ex. A, at 15; (4) on November 26, 2010, he complained of knee pain, but not of tooth pain, *id.* at 17; and (5) on December 2, 2010, Glover complained again of pain at the extraction site, was referred to the dental clinic, and a notation was made that Dr. Satter had previously indicated that tooth #15 had been extracted completely. *See id.* at 17; Def. Br. Ex. B, at 521.

On December 20, 2010, according to medical records from Downstate Correctional Facility, to which Glover was transferred after leaving G.R.V.C., a dentist saw Glover and performed an X-ray which showed a retained root at #15. *See* Glover Ex. C. He was referred to oral surgery. On February 9, 2011, oral surgeon Marion K. Moore, D.M.D., removed a retained root from the area of the extraction of tooth #15.[3] *Id.*

### B.     Procedural History

On December 13, 2011, Glover filed the original complaint in this case. Dkt. 2. On March 29, 2012, Glover filed an Amended Complaint. Dkt. 19.

On September 27, 2012, Defendants moved to dismiss Glover's Amended Complaint or, in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. 53, 55. Along with that motion, Defendants submitted a supporting memorandum of law, Dkt. 54, 56, and a "Notice to Pro Se Litigant Opposing Motion to Dismiss," Dkt. 53, 55, advising Glover that "the Court may treat this motion as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure" and that Glover should therefore submit evidence "countering the facts asserted by the defendants and raising issues of fact for trial." Defendants also submitted a certified copy of Glover's medical records. *See* Dkt. 59, 60.

---

[3] According to Glover, that surgery occurred at Sing-Sing Correctional Facility, to which Glover was transferred after his time at Downstate. *See* Am. Compl. 13.

On November 29, 2012, Glover submitted a brief and affirmation in opposition to Defendants' motion, Dkt. 81 & 82, and an accompanying declaration, Dkt. 83. On December 14, 2012, Defendants submitted a reply in support of their motion to dismiss or, in the alternative, for summary judgment. Dkt. 87.

## II. Conversion to Summary Judgment

Defendants seek to convert their motion to dismiss into one for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "The essential inquiry in determining whether it is appropriate to convert a motion [to dismiss] into a motion for summary judgment is 'whether the non-movant should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Costor v. Sanders*, No. 07 Civ. 11311 (NRB), 2009 WL 1834374, at *2 (S.D.N.Y. June 16, 2009) (quoting *Krijn v. Pogue Simone Real Estate Co.*, 896 F.2d 687, 689 (2d Cir. 1990)); *see also Brown v. Mullen*, No. 12 Civ. 0734 (PAE), 2013 WL 796530, at *2–3 (S.D.N.Y. Mar. 4, 2013).

"Ordinarily, formal notice is not required where a party 'should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009) (quoting *Villante v. Dep't of Corr. of City of N.Y.*, 786 F.2d 516, 521 (2d Cir. 1986)). However, where, as here,

the non-movant is proceeding *pro se*, "[n]otice is particularly important because the *pro se* litigant may be unaware of the consequences of his failure to offer evidence bearing on triable issues. Accordingly, *pro se* parties must have unequivocal notice of the meaning and consequences of conversion to summary judgment." *Id.* at 307–08 (citation omitted).

Here, Glover has received such notice. He received a Notice from Defendants expressly advising him that the motion might be converted to one for summary judgment. *See* Dkt. 53, 55. And Glover's submissions explicitly refer to Defendants' motion for summary judgment. *See, e.g.*, Glover Decl. 1 ("Declaration in Opposition to Defendants' Motion for Summary Judgment"; "I make this declaration in opposition to defendants' motion for summary judgment on my claim"); Pl. Br. 1 ("I . . . submit this Affirmation in further support of my motion to this Court for an order to dismiss[] the Defendants' 'Notice of Motion to Dismiss' and granting summary judgment to the plaintiff pursuant to Rule 56.e. [*sic*]"); *id.* at 22 ("Under Rule 56.1(B) summary judgment is not appropriate where, as here, the record establish[es] material facts which give rise to contradictory inferences, at least one of which supports the party opposing the motion."). It is thus fair to infer that Glover had not only constructive, but actual, notice of the possibility that the Court would treat defendants' motion as one for summary judgment. Finally, Glover himself has submitted medical records. Thus, conversion to summary judgment is appropriate here.

**III.    Applicable Legal Standard**

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of demonstrating the absence of a question of material fact. In making this determination, the Court must view all facts "in the

light most favorable" to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008). To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).

In considering Defendants' motion, the Court is mindful that Glover is a *pro se* litigant whose submissions must be construed to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted). However, this forgiving standard "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (citation omitted).

**IV.     Discussion**

The Court construes Glover's Amended Complaint as raising two claims: an Eighth Amendment claim for deliberate indifference to serious medical need, and a state law claim for negligent medical care. *See* Am. Compl. 5 ("[O]ral surgeon David Greenman show[ed]

malpractice and negligence."); *id.* at 9 ("Both Doctors performed a poor breach of duty towards taking proper care of my problem."). The Court addresses each, in turn.

### A. Eighth Amendment Claim

The Eighth Amendment protects prisoners[4] from "cruel and unusual punishment" caused by prison officials. U.S. Const. amend. VIII. "To determine whether a punishment is cruel and unusual, courts must look beyond historical conceptions to 'the evolving standards of decency that mark the progress of a maturing society.'" *Graham v. Florida*, 130 S. Ct. 2011, 2021 (2010) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).

To establish an Eighth Amendment violation arising out of inadequate medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). This standard incorporates both objective and subjective elements: "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003); *see also Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *Brown*, 2013 WL 796530, at *4.

#### 1. Serious Medical Need

The objective prong of a deliberate indifference claim requires that the alleged deprivation be sufficiently serious. *Salahuddin*, 467 F.3d at 279. "Only deprivations denying

---

[4] The deliberate indifference standard applies equally to pre-trial detainees, under the due process clauses of the Fifth or Fourteenth Amendments (depending on whether the plaintiff is held in state or federal custody), and convicted inmates, under the Eighth Amendment. *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009). Therefore, it is not relevant at which points Glover was a pre-trial detainee and at which he was a convicted inmate.

the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* (citations omitted). A serious medical need is generally characterized by "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005) (citation omitted). Courts in this Circuit have considered various factors in determining the existence of a serious medical condition, including: (1) the "existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (2) "the presence of a medical condition that significantly affects an individual's daily activities"; (3) "the existence of chronic and substantial pain"; and (4) "adverse medical effects or demonstrable physical injury." *Chance*, 143 F.3d at 702; *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The Second Circuit has held that "dental conditions (like other medical conditions) vary in severity and that a decision to leave a condition untreated will be constitutional or not depending on the facts of the particular case." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). "A cognizable claim regarding inadequate dental care . . . can be based on various factors, such as the pain suffered by the plaintiff, the deterioration of the teeth due to a lack of treatment, or the inability to engage in normal activities." *Chance*, 143 F.3d at 703 (citations omitted). Also relevant here, the Second Circuit has found that, "when the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in . . . treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in objective terms, sufficiently serious to support an Eighth Amendment claim." *Smith*, 316 F.3d at 185 (emphasis in original) (citation omitted).

Glover complains of "sickness and extreme chronic pains." Pl. Br. 18. He claims that he "had to endure the excruciating pain from the soar [*sic*] cut out of my gum and the left remnants that cause[d] pain if I moved my mouth or tr[ied] eating foods." Glover Decl. 5. Glover also alleges that, at some point, the extraction site was infected, although this claim is disputed by the Defendants. *Compare* Pl. Br. 20 ("[Defendants] state that there was no infection. [I] am disputing that statement."), *and* Glover Ex. A, Pharmacy Order from October 5, 2010 ("Dental extraction w/ infection"), *with* Def. Br. 9–10 ("[Glover's] allegations of infection are not borne out in the records."). And, although not mentioned in his Amended Complaint, in his opposition brief, Glover for the first time mentions a "keloid along the inside of my mouth where the defendant Greenman cut a chunk of my gum tissue that didn't heal properly." Pl. Br. 22.

For several reasons, Glover's complaints do not rise to the level of a serious medical condition. Glover's main complaint appears to be "extreme pain[] and suffering daily." Am. Compl. 9. Although the Court has no reason to dispute that Glover suffered pain as a result of the extraction, he has not supported his allegations with proof of pain of an intensity and duration that would result in an Eighth Amendment violation. The records cited above show that Glover's complaints of pain at the extraction site were sporadic, and that, on several of his visits to the medical clinic, he did not even mention such pain. For example, Glover's visits on November 11, 17, and 26 lack any mention of complaints of tooth pain. *See* Def. Br. Ex. B, at 486, 496; Glover Ex. A, at 15. Where he did complain of pain at the extraction site, the medical records Glover himself submitted indicate that he was examined each time and that, with the exception of the potential retained root, the site looked to be healing normally, with only some redness and swelling early on, no "acute distress," and a generally "unremarkable" healing process. Glover Ex. A. *Cf. Chance*, 143 F.3d at 702 (plaintiff suffered "great pain" for at least

six months, was unable to chew properly, and, as a result of the "inadequate treatment, at least one and possibly three of his teeth . . . degenerated to the point of requiring extraction"). In addition, Glover was given pain medication to alleviate the pain each time.

Apart from alleging that he experienced pain resulting from his extraction and the retained root, Glover does not allege any other injury, let alone any way in which he was denied access to reasonable medical care. Glover cannot fairly allege delay in treatment, as the records show—and Glover does not dispute—that he was repeatedly seen in the dental clinic and provided with medication (although not, perhaps, on each occasion, with the precise relief he sought). Although Glover argues that the extraction site became infected, and the Defendants dispute that allegation, even if Glover's claim of infection were taken as true, it would not rise to the level of a constitutional violation. The records indicate that Glover was prescribed an antibiotic on September 29, 2010, *see* Glover Ex. A, at 8, and Glover does not allege that any infection continued thereafter or was exacerbated by a failure to treat it. Glover does not even specify the duration of the alleged infection. The fact of an infection alone is insufficient to create a "serious medical condition."

In his brief, Glover mentions for the first time a "keloid along the inside of my mouth where the defendant Greenman cut a chunk of my gum tissue that didn't heal properly." Pl. Br. 22. That claim, however, is not supported in any way in Glover's submissions and is not included in his Amended Complaint. And the medical records do not bear out the claim of a permanent scar resulting from Dr. Greenman's extraction; they indicate that the extraction site healed normally. Even the records which identify the retained root fail to mention any scar in Glover's mouth. Glover has adduced no evidence whatsoever in support of his allegation that Dr. Greenman excised too much of his gum, let alone that a scar resulted.

12

Thus, Glover is left only with the allegations that an extraction led to a retained root and that he suffered considerable pain, and perhaps an infection, as a result (for both of which he appears to have received appropriate medical attention and medication). Although undeniably regrettable, this experience does not give rise to a constitutional violation. *See Brown*, 2013 WL 796530, at *5 (allegations of "not being able to eat well" and "lots of pain" as a result of an extraction not sufficient to establish serious medical condition, where medical records demonstrate complaints of pain and the administration of pain medication, but no swelling or infection); *Mendoza v. McGinnis*, No. 05-CV-1124 (TJM/DEP), 2008 WL 423960, at *10 (N.D.N.Y. Sept. 11, 2008) (broken tooth not sufficiently serious medical need where plaintiff has not alleged extreme pain or the likelihood that if left untreated it would result in degeneration); *Webley v. Hartmann*, No. 03-CV-0596 (LEK/DRH), 2005 WL 1520852, at *2–3 (N.D.N.Y. June 27, 2005) (claims of extreme tooth pain and difficulty eating not sufficiently serious where plaintiff was regularly examined by nurses and dentists, prescribed medicine for pain, and diagnosis was not considered urgent).

### 2. Deliberate Indifference

For these reasons, Glover has failed to raise a genuine issue of material fact as to the objective prong of the Eighth Amendment standard. The Court therefore need not proceed to consider the second, subjective prong. However, Glover's claim falls short with regard to that prong as well, because he has failed to establish a genuine issue of fact as to whether "the charged official[s acted] with a sufficiently culpable state of mind." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

"Mere negligence" during the performance of medical treatment is insufficient to meet the subjective prong required under the Eighth Amendment standard of liability. *Farmer v.*

13

*Brennan*, 511 U.S. 825, 835 (1994). The required state of mind is "equivalent to criminal recklessness, [where] the official 'knows of and disregards an excessive risk to inmate health or safety.'" *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) (quoting *Farmer*, 511 U.S. at 837). Glover has failed to raise a genuine issue of material fact as to whether Dr. Greenman or Dr. Satter acted with deliberate indifference. The Court examines the conduct of each defendant doctor against this standard in turn.

As to Dr. Greenman, Glover's claim is essentially one of negligence. He alleges that Dr. Greenman performed the extraction "recklessly," leading to pain and a retained root. However, Defendants point out that Glover merely "describes steps that need to be taken during the extraction of a large molar." Def. Br. 13. And the only suggestion provided by Glover that Dr. Greenman acted with the requisite culpable state of mind is his allegation that Dr. Greenman got upset or angry while performing the extraction. That conclusory allegation, unsupported by any other facts, does not suffice to raise a genuine issue of material fact as to whether Dr. Greenman acted recklessly or willfully. At most, Glover has raised a claim of medical malpractice, and "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Glover has not done so here with respect to Dr. Greenman.

As to Dr. Satter, Glover's allegations consist only of the claim that his examination was insufficiently thorough. As support, Glover notes that Dr. Satter stated in his report that the extraction had been performed completely and was healing well, implying that Dr. Satter failed to spot the retained root. This, too, however, could not reasonably support anything more than a claim of negligence or medical malpractice.

14

First, it is not clear that Glover's allegations represent anything more than a disagreement over the proper course of treatment. As Defendants point out, the records show that Dr. Satter examined Glover and reviewed his X-ray and that, although he found a bone fragment, he concluded "in his medical judgment, [it] would heal on its own without intervention." Def. Br. 13. Courts have repeatedly held that differences in opinion about treatment do not constitute deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Woods v. Goord*, No. 01 Civ. 3255 (SAS), 2002 WL 731691, at *5 n.10 (S.D.N.Y. Apr. 23, 2002) (collecting cases); *see also Graham v. Gibson*, No. 04-CV-6088-CJS-MWP, 2007 WL 3541613, at *8 (W.D.N.Y. Nov. 14, 2007) (dentist's decision to allow retained root tips to heal in place rather than to extract them, over plaintiff's objection, did not give rise to constitutional claim but merely represented difference of opinion).

Furthermore, even if Dr. Satter's actions are characterized as something more than a difference of opinion regarding treatment, and assuming his failure to spot or remove the retained root tip at the time of his consultation with Glover constituted a "fail[ure] to properly give [Glover] treatment," Am. Compl. 12, there are no allegations anywhere in Glover's submissions to the Court that Dr. Satter acted with a culpable state of mind. It bears repeating here that "the mere malpractice of medicine in prison does not amount to an Eighth Amendment violation." *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000). At worst, Glover's claims against Dr. Satter amount to claims of medical malpractice. They are, therefore, not sufficient to meet the subjective, "deliberate indifference" prong required to raise a claim under the Eighth Amendment.

As to any argument that Glover encountered an unreasonable delay in treatment, the facts belie that claim. On repeated visits to the clinic, Glover received examination and medication.

And even if he is correct that the doctors were negligent in not removing his retained root at an earlier time, the delay he complains of cannot constitute deliberate indifference. Dr. Greenman performed the extraction on September 28, 2010; Dr. Satter examined Glover on October 26, 2010. The medical records demonstrate that by December 20, 2010, Glover had been transferred to the Downstate Correctional Facility. Glover makes no complaints whatsoever about the medical treatment he received thereafter. Therefore, even if Glover's claim of a delay in treatment (rather than a disagreement about that treatment) is accepted as true, the longest possible time period of such a delay, resolving all uncertainties in Glover's favor, was approximately two and a half months. This is not the sort of delay that constitutes deliberate indifference in connection with provision of dental care. *See Alster v. Goord*, 745 F. Supp. 2d 317, 334 (S.D.N.Y. 2010) ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation. Rather, a prisoner must show the delay was deliberate and that it caused [him] to suffer unnecessary and wanton infliction of pain." (citations omitted); seven-month delay before denture surgery did not constitute deliberate indifference); *Summerville v. Faciuna*, No. 05–CV–6459 (CJS), 2009 WL 2426021, at *7 (W.D.N.Y. Aug. 6, 2009) ("Generally, in cases involving delayed care, the Second Circuit has reserved a finding of deliberate indifference for extreme cases, such as: ignoring a life-threatening and fast-degenerating condition for three days, *Liscio v. Warren*, 901 F.2d 274, 277 (2d Cir. 1990); delaying care as a form of punishment, *Archer v. Dutcher*, 733 F.2d 14, 16–17 (2d Cir. 1984); or delaying major surgery for over two years, *Hathaway v. Coughlin*, 841 F.2d 48, 50–51 (2d Cir. 1988)).

Glover thus has not adduced facts sufficient to sustain an allegation that either defendant acted with deliberate indifference. His Eighth Amendment claim therefore fails for two reasons:

16

he has failed to raise a genuine issue of material fact as to whether he suffered a sufficiently serious medical condition and as to whether the defendants acted with deliberate indifference.

### B. Application for Pro Bono Counsel

The Court has received Glover's most recent request, filed March 18, 2013, for the Court to appoint pro bono counsel in this matter.[5] As the Court has stated in its previous orders denying Glover's requests for pro bono counsel, *see, e.g.*, Dkt. 9, 18, & 48, the standard for appointing pro bono counsel is a difficult one to meet. To qualify for the appointment of pro bono counsel, a plaintiff must first demonstrate that his claim has substance or a likelihood of success. *See Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010); *Hodge v. Police Officers*, 802 F.2d 58, 60–61 (2d Cir. 1986). If an applicant meets this threshold standard, the Court must then consider "the merits of plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (per curiam). The Court is to remain mindful throughout the inquiry that volunteer attorney time is a precious commodity, and should therefore not grant the appointment of counsel indiscriminately. *Id.* at 172.

Glover has not met this standard. Upon reviewing his claims and the evidence he has submitted in support of his opposition to Defendants' motion for summary judgment, viewing the facts in the light most favorable to Glover as the non-moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 132 (2d Cir. 2008), the Court has found that Glover's Eighth Amendment claims against Dr. Greenman and Dr. Satter

---

[5] Glover has acted diligently in his pursuit of pro bono counsel, moving the Court to appoint counsel on the following occasions: January 3, 2012, Dkt. 8; February 3, 2012, Dkt. 14; August 23, 2012, Dkt. 45; November 5, 2012, Dkt. 73; and March 18, 2013, Dkt. 92.

clearly cannot survive. Glover thus cannot satisfy the threshold inquiry, required for the appointment of pro bono counsel, that his claim has substance or a likelihood of success. His application for the Court to appoint pro bono counsel is, therefore, denied.

### C. State Law Claim

The Court has construed Glover's Amended Complaint as raising a medical malpractice claim in addition to the Eighth Amendment claim. *See supra* page 8. Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chic. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court should, in deciding whether to exercise its supplemental jurisdiction, balance the traditional "values of judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Although the exercise of supplemental jurisdiction is discretionary, the ordinary case "will point toward declining jurisdiction over the remaining state-law claims." *In re Merrill Lynch*, 154 F.3d at 61 (citing *Cohill*, 484 U.S. at 350 n.7).

Here, no circumstances counsel in favor of the Court exercising supplemental jurisdiction over Glover's state law claims. A claim for medical malpractice is governed by a materially different standard than a claim under the Eighth Amendment. This Court has not yet invested

the judicial resources necessary to resolve a medical malpractice claim. Furthermore, such a claim would be more appropriately decided by a state court, before which such claims are typically brought. The Court therefore declines to exercise supplemental jurisdiction over Glover's state law medical malpractice claim. That claim is dismissed without prejudice, meaning that Glover is free to pursue it in state court.

## CONCLUSION

Defendants' motion for summary judgment as to Glover's Eighth Amendment claim is granted. Glover's application for the Court to request pro bono counsel in this matter is denied.[6] Glover's medical malpractice claim is dismissed without prejudice. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to terminate the motions at docket numbers 53, 55, 71, 73, 80, and 92, and to close this case.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 1, 2013
New York, New York

---

[6] The Court expresses no opinion here as to whether, should Glover choose to pursue his medical malpractice claims in state court, counsel should be appointed to represent him in that proceeding.